Kiley L. Grombacher, Esq.
Marcus J. Bradley, Esq.
**BRADLEY/GROMBACHER, LLP**
31365 Oak Crest Dr., Suite 24
Westlake Village, CA 91361
Telephone: (805) 270-7100
Facsimile: (805) 270-7589
*kgrombacher@bradleygrombacher.com*
*mbradley@bradleygrombacher.com*

Joseph M. Lyon, Esq. (*pro hac vice* forthcoming)
**THE LYON FIRM, LLC**
2754 Erie Avenue
Cincinnati, OH 45208
Telephone: (513) 381-2333
Facsimile: (513) 766-9011
*jlyon@thelyonfirm.com*

*Attorney for Plaintiff and the Class*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAURIE GASNICK, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>RUNNING WAREHOUSE, LLC, TACKLE WAREHOUSE, LLC, TENNIS WAREHOUSE, LLC, and SKATE WAREHOUSE, LLC,<br><br>Defendants. | **Case No.:**<br><br>**CLASS ACTION COMPLAINT FOR:**<br><br>1. **NEGLIGENCE;**<br><br>2. **BREACH OF IMPLIED CONTRACT;**<br><br>3. **UNJUST ENRICHMENT; AND**<br><br>4. **DECLARATORY JUDGMENT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Lauri Gasnick ("Plaintiff"), individually and on behalf of herself and all other persons similarly situated, brings this Class Action Complaint against Running Warehouse, LLC, Tackle Warehouse, LLC, Tennis Warehouse, LLC, and Skate Warehouse, LLC ("Warehouses" or "Defendants"), and alleges, upon personal knowledge as to her own actions and her counsel's investigation, and upon information and belief as to all other matters, as follows:

## NATURE OF THE ACTION

1. Defendants run online consumer websites that sell discounted sporting goods in California and throughout the United States.

2. Plaintiff brings this class action against Defendants for their failure to properly secure and safeguard the Personally Identifiable Information ("PII") that had been provided by its clients as a condition of service, including, without limitation, names, addresses, payment card numbers, expiration dates, and payment card security codes.

3. By obtaining, collecting, using, and deriving a benefit from the PII of Plaintiff and Class Members, Defendants assumed legal and equitable duties to those individuals to protect and safeguard that information from unauthorized access and intrusion.

4. Plaintiff's and the putative class member's PII was compromised and stolen due to Defendants' negligent and/or careless acts and omissions and the failure to protect its customers' sensitive data.  The hackers exfiltrated and acquired the type of information that would allow a criminal actor to make fraudulent purchases and to steal customers' identities.

5. Hackers can access and then offer for sale the unencrypted, unredacted PII to criminals. The exposed PII of Plaintiff and Class Members can be sold on the dark web. Plaintiff and Class Members now face a present and continuing lifetime risk of identity theft, which is heightened here by the payment card information.

CLASS ACTION COMPLAINT

6.    In addition to Defendants' failure to prevent the Data Breach, Defendants failed to detect and report the breach for months.  On or about December 16, 2021, Defendants began notifying customers and state Attorneys General about a widespread data breach on its systems that occurred on October 1, 2021 (the "Data Breach").

7.    According to Defendants, on October 15, 2021 they became aware of the Data Breach when an unauthorized third party gained access and obtained payment card information from Defendants' websites – most likely from a common e-commerce platform shared by Defendants.  Defendant failed to use reasonable industry standard security measures, which would have prevented this type of attack from being successful. Defendant's failure to use such measures is particularly egregious given the amount of highly sensitive PII that it maintains and the prevalence of data security incidents targeting this type of information.

8.    Despite the risk of imminent financial harm to Plaintiff and the affected customers, Defendants are not offering affected customers any identity protection services, which leaves affected customers exposed and unprotected from future fraud an identity theft arising from the breach.

9.    The stolen PII has great value to hackers due to its thoroughness and the numbers involved.  It is likely that hackers stole the full payment card information for almost two million customers.  For example, the Maine Attorney General reports that the Data Breach affected 1,813,224 persons.[1]

10.    Plaintiff brings this action on behalf of all persons whose PII was compromised as a result of Defendants' failure to: (i) adequately protect its users' PII, (ii) warn users of their inadequate information security practices, and (iii)

---

[1] *See Data Breach Notifications,* OFFICE OF THE MAINE ATTORNEY GENERAL, https://apps.web.maine.gov/online/aeviewer/ME/40/5646791e-9065-46de-8721-6e5536f24853.shtml (last visited Dec. 28, 2021). Note that the notices for each Defendant admit that the total number of persons impacted by the Data Breach is the same; i.e., 1,813,224.

CLASS ACTION COMPLAINT

effectively monitor their websites and e-commerce platform for security vulnerabilities and incidents. Defendants' conduct amounts to negligence and violates federal and state statutes.

11.    Plaintiff and similarly situated customers ("Class Members") have suffered injury as a result of Defendants' conduct. These injuries include: (i) lost or diminished value of their PII; (ii) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PII; (iii) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach, including but not limited to lost time; and (iv) the present and certainly increased risk to their PII, which (a) may remain available on the dark web for individuals to access and abuse, and (b) remains in Defendants' possession and is subject to further unauthorized disclosures so long as Defendants fail to undertake appropriate and adequate measures to protect the PII.

12.    Defendants disregarded the rights of Plaintiff and Class Members by intentionally, willfully, recklessly, or negligently failing to implement and maintain adequate and reasonable measures to ensure that the PII of Plaintiff and Class Members was safeguarded, failing to take available steps to prevent an unauthorized disclosure of data, and failing to follow applicable, required, and appropriate protocols, policies, and procedures regarding the encryption of data, even for internal use. As a result, the PII of Plaintiff and Class Members was compromised through disclosure to a known criminal organization. Plaintiff and Class Members have a continuing interest in ensuring that their information is and remains safe, and they should be entitled to injunctive and other equitable relief.

## JURISDICTION & VENUE

13.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because this is a class action wherein the amount of controversy exceeds the sum or value of $5,000,000, exclusive of interest and

costs, there are more than 100 members in the proposed class, and at least one
member of the class is a citizen of a state different from Defendants. Defendant
Running Warehouse, LLC's California Secretary of State business filings indicate
that its three members reside in the State of California: Drew Munster, Joe Rubio,
and Mark Sczbecki, each of whom are California residents and list 181 Suburban
Road, Suite 120, San Luis Obispo, California 93401 as their address.[2] Defendant
Skate Warehouse, LLC's California Secretary of State business filings indicate that
its three members reside in the State of California: Mark Sczbecki, David Stubbs,
and Stephan Garcia, each of whom are California residents and list 181 Suburban
Road, San Luis Obispo, California 93401 as their address.[3] Defendant Tennis
Warehouse, LLC is operated by Sports Warehouse Properties, LLC. According to
Sports Warehouse Properties, LLC's California Secretary of State business filings,
it has three members all of with an address of 191 Suburban Road, San Luis
Obispo, CA 93401: Drew Munster, Ziyad Naccasha, and Mark Sczbecki.[4] Tackle
Warehouse, LLC is operated by Wilderness Sports Warehouse, LLC. According
to Wilderness Sports Warehouse, LLC's California Secretary of State business
filings, it has three members all of with an address of 191 Suburban Road, San Luis
Obispo, CA 93401: Mark Sczbecki, Drew Munster, and Richard Zeilenga.
Accordingly, minimal diversity under 28 U.S.C. § 1332(d) exists in this case
because Plaintiff is a resident of Washington and the members of Defendants reside

---

[2] Running Warehouse, LLC:
https://businesssearch.sos.ca.gov/Document/RetrievePDF?Id=200520110180-
2195068 (last visited on Dec. 28, 2021).

[3] Skate Warehouse, LLC:
https://businesssearch.sos.ca.gov/Document/RetrievePDF?Id=200225610057-
21246891 (last visited on Dec. 28, 2021).

[4] Tennis Warehouse, LLC:
https://businesssearch.sos.ca.gov/Document/RetrievePDF?Id=200721410200-
23235467 (last visited on Dec. 28, 2021).

CLASS ACTION COMPLAINT

in California.[5] Moreover, this Court has jurisdiction over this action under 28 U.S.C. § 1332(a)(1) because Plaintiff Gasnick is a Washington citizen and therefore diverse from Defendants, which are not Florida citizens.

14.    This Court has personal jurisdiction over Defendants because Defendants have systematic and continuous contacts with the state through their websites and because their headquarters are located in California and this District.

15.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to these claims occurred in, were directed to, and/or emanated from this District.  Defendants reside within this judicial district and a substantial part of the events giving rise to the claims alleged herein occurred within this judicial district.

## **PARTIES**

16.    Plaintiff Laurie Gasnick is a resident and citizen of Washington residing in Clallam County, Washington. Ms. Gasnick used Defendant Running Warehouse's website on or about July 18, 2020, to purchase running shoes. During the course of the purchase, she provided Defendant her PII.  On or about October 18, 2021, she was contacted by a criminal posing as a Wells Fargo Bank representative regarding fraudulent activity on her account. Through this scam, Ms. Gasnick lost $1,000. She believes that she was targeted as a result of this Data Breach, as the debit card account that sustained the loss was the same account involved in the breach.  She was notified by Defendants via email on or about December 23, 2021, that she was impacted by the Data Breach which included her debit card information.

17.    Defendants are California corporations with their principal place of business in San Luis Obispo, California. During the relevant time, Defendants

---

[5] Tackle Warehouse, LLC: https://businesssearch.sos.ca.gov/Document/RetrievePDF?Id=200225610016-22878036 (last visited on Dec. 28, 2021).

operated across the United States through their websites.

## SUBSTANTIVE ALLEGATIONS

***Defendants' Background***

18.    Since 2017, Defendants have maintained a Privacy Policy that assured their customers that they are "committed to protecting" their customers' privacy and that they use "commercially reasonable ethical, physical, managerial, and technical safeguards to preserve the integrity and security of your personal information consistent with industry standards. For example, we use encryption, passwords, and physical security measures to help protect your personal information against unauthorized access and disclosure."[6]

19.    Defendants, however, do not claim that they complied with the Payment Card Industry Data Security Standard ("PCI DSS"), which is a requirement for businesses that store, process, or transmit payment card data.

20.    The PCI DSS defines measures for ensuring data protection and consistent security processes and procedures around online financial transactions. Businesses that fail to maintain PCI DSS compliance are subject to steep fines and penalties.

21.    As formulated by the PCI Security Standards Council, the mandates of PCI DSS compliance include, in part: Developing and maintaining a security policy that covers all aspects of the business, installing firewalls to protect data, and encrypting cardholder data that is transmitted over public networks using anti-virus software and updating it regularly.

22.    To purchase items on Defendants' websites, customers, at a minimum, are required to enter the following PII onto the website:

- name;
- billing address;

---

[6] *See Privacy Policy*, https://www.runningwarehouse.com/privacypolicy.html (last visited Jan. 5, 2022).

CLASS ACTION COMPLAINT

- shipping address;
- email address;
- name on the payment card;
- type of payment card;
- full payment card number;
- payment card expiration date; and
- security code or CVV code (card verification number).

***The Data Breach***

23.    Starting on or about December 16, 2021, Defendants sent customers via email and mail a "Notice of Data Breach."   The notice informed affected customers that:

***What Happened?***

> On October 15, 2021 [Defendants] became aware of a potential data security incident . . .   On November 6, 2021, the investigation determined that payment card information was obtained without authorization on October 1, 2021. On November 29, 2021, the investigation determined that your payment card information may have been affected during the incident.

> ***What Information was Involved?***

> The incident may have involved payment card information, including your name, address, payment card number, expiration date, and payment card security code.[7]

/ / /

/ / /

/ / /

_____

[7] https://apps.web.maine.gov/online/aeviewer/ME/40/5646791e-9065-46de-8721-6e5536f24853/bb36a1a3-b5e3-47b2-b2b4-c9e3e70a59c2/document.html (last visited Dec. 28, 2021)

CLASS ACTION COMPLAINT

24.     Defendants' notice to the state Attorneys General also provided this same information.[8]

25.     Despite Defendants' representation that it utilizes encryption to protect its customers PII, Defendants failed to use encryption to protect sensitive information transmitted online, and unauthorized individuals accessed Defendants' customers' unencrypted, unredacted information, including name, address, email address, and payment card information, which includes payment card number, CVV code, expiration date, and possibly more.[9]

**Value of Personally Identifiable Information**

26.     The PII of consumers remains of high value to criminals, as evidenced by the prices they will pay through the dark web.  Numerous sources cite dark web pricing for stolen identity credentials.  For example, personal information can be sold at a price ranging from $40 to $200, and bank details have a price range of $50 to $200.  Experian reports that a stolen credit or debit card number can sell for $5-110 on the dark web.  Criminals can also purchase access to entire company data breaches from $900 to $4,500.

27.     At all relevant times, Defendants knew, or reasonably should have known, of the importance of safeguarding PII and of the foreseeable consequences that would occur if its data security system was breached, including, specifically, the significant costs that would be imposed on its customers as a result of a breach. Defendants were, or should have been, fully aware of the significant volume of

---

[8] https://oag.ca.gov/ecrime/databreach/reports/sb24-548688 (last visited Dec. 28, 2021).

[9] *Id*. It is clear that the information exposed in the Data Breach was unencrypted: California law requires companies to notify California residents "whose **unencrypted** personal information was, or is reasonably believed to have been, acquired by an unauthorized person" due to a "breach of the security of the system[.]" Cal. Civ. Code § 1798.82(a)(1) (emphasis added). Defendants notified the California Attorney General of the Data Breach on Dec. 18, 2021, evidencing that the exposed data was unencrypted.

CLASS ACTION COMPLAINT

daily credit and debit card transactions on its website amounting to potentially hundreds of thousands of payment card transactions, and thus, the significant number of individuals who would be harmed by a breach of Defendants' systems.

***Plaintiff Gasnick's Experience***

28.     Plaintiff Laurie Gasnick placed an order for running shoes on or about July 18, 2020. She checked out using her bank debit card.  On the payment platform, Ms. Gasnick entered her PII: name, address, payment card type and full number, CVV security code, payment card expiration date, and email address.

29.     On or about October 18, 2021, Ms. Gasnick received a targeted scam phone call from a criminal posing as a representative from her bank regarding fraudulent charges on her account. The criminal had all of her account information to pose as an account representative.   The scammer, posing as the bank representative, convinced her to set up a new Zelle account at the bank.  Following the establishment of the account, the scammer arranged for $1,000 to be transferred to an outside account without her authorization.  As a result, Ms. Gasnick lost $1,000.

30.     While her bank changed the debit card number in response to the illegal charges and mailed Ms. Gasnick a new card, she has not been reimbursed for the lost funds.

31.     In addition, in response the Data Breach notice and the fraud, Ms. Gasnick had to take time out of her day to deal with the charges and the account number change.   She also has spent significant time in contact with the local Sheriff's Department regarding this issue. This was time she otherwise would have spent performing other activities, such as her job and/or leisure activities for the enjoyment of life.

32.     Knowing that a hacker stole her PII, and that her PII may be available for sale on the dark web, has caused Ms. Gasnick great concern. She is now very concerned about payment card theft and identity theft in general. This breach has

given Ms. Gasnick hesitation about using Defendants' online services, and reservations about shopping on other online websites.

33.    Now, due to Defendants' misconduct and the resulting Data Breach, hackers obtained her PII at no compensation to Ms. Gasnick whatsoever. That is money lost for her, and money gained for the hackers – who could sell her PII on the dark web.

34.    Ms. Gasnick also suffered actual injury and damages in paying money to, and purchasing products from, Defendants' website during the Data Breach, expenditures which she would not have been made had Defendants disclosed that they lacked computer systems and data security practices adequate to safeguard customers' PII from theft.

35.    Moreover, Ms. Gasnick suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from her PII being placed in the hands of criminals.

36.    Ms. Gasnick has a continuing interest in ensuring her PII, which remains in Defendants' possession, is protected and safeguarded from future breaches.

***Plaintiff Gasnick's Efforts to Secure PII***

37.    Defendants' Data Breach caused Ms. Gasnick harm.

38.    Prior to the activity described above during the period in which the Data Breach occurred, the debit card that Ms. Gasnick used to purchase products on Defendants' website had never been stolen or compromised. Ms. Gasnick reviewed her debit accounts and other financial statements periodically and to her knowledge this card had not been compromised in any manner.

39.    Additionally, Ms. Gasnick never knowingly transmitted unencrypted PII over the internet or any other unsecured source.

40.    Ms. Gasnick stores any and all electronic and paper documents containing her PII in a safe and secure location.

CLASS ACTION COMPLAINT

# CLASS ACTION ALLEGATIONS

41.     Plaintiff brings this nationwide class action pursuant to Rule 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of Civil Procedure, on behalf of themselves and on behalf of all members of the following class:

> All individuals whose PII was compromised in the data breach announced by Defendants on or about December 16, 2021 (the "Class").

42.     Excluded from the Classes are the following individuals and/or entities: Defendants and its parents, subsidiaries, affiliates, officers and directors, current or former employees, and any entity in which Defendants have a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; any and all federal, state or local governments, including but not limited to their departments, agencies, divisions, bureaus, boards, sections, groups, counsels and/or subdivisions; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

43.     Plaintiff reserves the right to modify or amend the definitions of the proposed Classes before the Court determines whether certification is appropriate.

44.     **Numerosity**: The Classes are so numerous that joinder of all members is impracticable. Defendants have identified 1,813,224 customers whose PII may have been improperly accessed in the data breach, and the Classes are apparently identifiable within Defendants' records.

45.     **Commonality**: Questions of law and fact common to the Classes exist and predominate over any questions affecting only individual Class Members. These include:

> a. When Defendants actually learned of the data breach and whether the response was adequate;
>
> b. Whether Defendants owed a duty to the Classes to exercise due care in

collecting, storing, safeguarding and/or obtaining their PII;

c.  Whether Defendants breached that duty;

d.  Whether Defendants implemented and maintained reasonable security procedures and practices appropriate to the nature of storing Plaintiff's and Class Members' PII;

e.  Whether Defendants acted negligently in connection with the monitoring and/or protection of Plaintiff's and Class Members' PII;

f.  Whether Defendants knew or should have known that they did not employ reasonable measures to keep Plaintiff's and Class Members' PII secure and prevent loss or misuse of that PII;

g.  Whether Defendants adequately addressed and fixed the vulnerabilities which permitted the data breach to occur;

h.  Whether Defendants caused Plaintiff's and Class Members damages;

i.  Whether Defendants violated the law by failing to promptly notify Class Members that their PII had been compromised;

j.  Whether Plaintiff and the other Class Members are entitled to credit monitoring and other monetary relief;

46.  **Typicality**: Plaintiff's claims are typical of those of other Class Members because all had their PII compromised as a result of the Data Breach, due to Defendants' misfeasance.

47.  **Adequacy**: Plaintiff will fairly and adequately represent and protect the interests of the Class Members.  Plaintiff's Counsel are competent and experienced in litigating privacy-related class actions.

48.  **Superiority and Manageability**: Under Rule 23(b)(3), a class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all the members of the Class is impracticable. Individual damages for any individual Class Member are likely to be insufficient to justify the cost of individual litigation, so that in the absence of class treatment,

Defendants' misconduct would go unpunished.  Furthermore, the adjudication of this controversy through a class action will avoid the possibility of inconsistent and potentially conflicting adjudication of the asserted claims. There will be no difficulty in the management of this action as a class action.

49.    Class certification is also appropriate under Fed. R. Civ. P. 23(a) and (b)(2) because Defendants have acted or refused to act on grounds generally applicable to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate as to the Class as a whole.

50.    Likewise, particular issues under Rule 23(c)(4) are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein.  Such particular issues include, but are not limited to:

a.  Whether Defendants owed a legal duty to Plaintiff and Class Members to exercise due care in collecting, storing, using, and safeguarding their PII;

b.  Whether Defendants breached a legal duty to Plaintiff and the Class Members to exercise due care in collecting, storing, using, and safeguarding their PII;

c.  Whether Defendants failed to comply with its own policies and applicable laws, regulations, and industry standards relating to data security;

d.  Whether Defendants failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the data breach; and

e.  Whether Class Members are entitled to actual damages, credit monitoring or other injunctive relief, and/or punitive damages as a result of Defendants' wrongful conduct.

///

///

CLASS ACTION COMPLAINT

### FIRST CLAIM FOR RELIEF

**Negligence**

**(On Behalf of Plaintiff and the Class)**

51.     Plaintiff re-alleges and incorporates by reference herein all of the allegations contained in paragraphs 1 through 50.

52.     Defendants owed a duty to Plaintiff and Class Members to exercise reasonable care in obtaining, using, and protecting their PII from unauthorized third parties.

53.     The legal duties owed by Defendants to Plaintiff and Class Members include, but are not limited to the following:

    a.  To exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting the PII of Plaintiff and Class Members in their possession;

    b.  To protect PII of Plaintiff and Class Members in their possession using reasonable and adequate security procedures that are compliant with industry-standard practices; and

    c.  To implement processes to quickly detect a data breach and to timely act on warnings about data breaches, including promptly notifying Plaintiff and Class Members of the Data Breach.

54.     Defendants' duty to use reasonable data security measures also arose under Section 5 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45(a)(1), which prohibits "unfair . . . practices in or affecting commerce," including, as interested and enforced by the FTC, the unfair practices of failing to use reasonable measures to protect PII by companies such as Defendants.

55.     Various FTC publications and data security breach orders further form the basis of Defendants' duty. Plaintiff and Class Members are consumers under the FTC Act. Defendants violated Section 5 of the FTC Act by failing to use reasonable measures to protect PII and not complying with industry standards.

CLASS ACTION COMPLAINT

56.    Defendants breached their duties to Plaintiff and Class Members. Defendants knew or should have known the risks of collecting and storing PII and the importance of maintaining secure systems.

57.    Defendants knew or should have known that their security practices did not adequately safeguard Plaintiff's and the other Class Members' PII, including, but not limited to, the failure to detect the data breach the moment it happened.

58.    Through Defendants' acts and omissions described in this Complaint, including Defendants' failure to provide adequate security and their failure to protect the PII of Plaintiff and the Class from being foreseeably captured, accessed, exfiltrated, stolen, disclosed, accessed, and misused, Defendants unlawfully breached their duty to use reasonable care to adequately protect and secure Plaintiff's and Class Members' PII during the period when it was within Defendants' possession and control.

59.    Defendants breached the duties they owed to Plaintiff and Class Members in several ways, including:

    a. Failing to implement adequate security systems, protocols, and practices sufficient to protect customers' PII, including, but not limited to the use of encryption, and thereby creating a foreseeable risk of harm;

    b. Failing to comply with the minimum industry data security standards during the period of the data breach (e.g., There is no indication that Defendants' e-commerce platform is PCI DSS compliant and encrypts customers' order information, such as name, address, and credit card number, during data transmission, which did not occur here);

    c. Failing to act despite knowing or having reason to know that Defendants' systems were vulnerable to a data breach (e.g., Defendants did not detect the data breach for almost two weeks); and

d. Failing to timely and accurately disclose to customers that their PII had been improperly acquired or accessed and was potentially available for sale to criminals on the dark web (e.g., More than two months went by before Defendants notified customers of the data breach).

60. Due to Defendants' conduct, Plaintiff and Class Members are entitled to credit monitoring. Ongoing credit monitoring is reasonable here. The PII taken can be used towards identity theft and other types of financial fraud against the Class Members. Hackers not only stole many of Defendants customers' names from the website, they also stole customers' billing and shipping addresses, payment card numbers, CVV codes, and payment card expiration dates. They obtained everything they need to illegally use Defendants customers' credit cards to make illegal purchases. There is no question that this PII was taken by sophisticated cybercriminals, increasing the risks to the Class Members. The consequences of identity theft are serious and long-lasting. There is a benefit to early detection and monitoring.

61. Some experts recommend that data breach victims obtain credit monitoring services for at least ten years following a data breach. Annual subscriptions for credit monitoring plans range from approximately $219 to $358 per year.

62. As a result of Defendants' negligence, Plaintiff and Class Members suffered injuries that include: (i) the lost or diminished value of PII; (ii) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PII; (iii) lost opportunity costs associated with attempting to mitigate the actual consequences of the data breach, including but not limited to time spent deleting phishing email messages and cancelling credit cards believed to be associated with the compromised account;  (iv) the continued risk to their PII, which may remain for sale on the dark web and is in Defendant's possession, subject to further unauthorized disclosures so long as Defendants fail

CLASS ACTION COMPLAINT

to undertake appropriate and adequate measures to protect the PII of customers and former customers in their continued possession; and (v) future costs in terms of time, effort, and money that will be expended to prevent, monitor, detect, contest, and repair the impact of the PII compromised as a result of the data breach for the remainder of the lives of Plaintiff and Class Members, including ongoing credit monitoring.

63. These injuries were reasonably foreseeable given the history of security breaches of this nature. The injury and harm that Plaintiff and the other Class Members suffered was the direct and proximate result of Defendants' negligent conduct.

## SECOND CLAIM FOR RELIEF

### Breach of Implied Contract

### (On Behalf of Plaintiffs and the Nationwide Class)

64. Plaintiffs incorporate by this reference paragraphs 1 through 63 above.

65. Plaintiffs and the Class Members delivered their personal and financial information to Defendants as part of the process of obtaining services provided by Defendants.

66. Plaintiffs and members of the Class entered into implied contracts with Defendants under which Defendants agreed to safeguard and protect such information, including the use of encryption, and to timely and accurately notify Plaintiffs and Class Members if and when their data had been breached and compromised. Each such contractual relationship imposed on Defendants an implied covenant of good faith and fair dealing by which Defendants were required to perform their obligations and manage Plaintiffs' and Class Members' data in a manner which comported with the reasonable expectations of privacy and protection attendant to entrusting such data to Defendants.

67. In providing such data, Plaintiffs and the other members of the Class entered into an implied contract with Defendants whereby Defendants, in receiving

such data, became obligated to reasonably safeguard Plaintiffs' and the other Class Members' sensitive, non-public information.

68.    In delivering their personal data to Defendant, Plaintiffs and Class Members intended and understood that Defendants would adequately safeguard that data.

69.    Plaintiffs and the Class Members would not have entrusted their private and confidential financial and personal information to Defendants in the absence of such an implied contract.

70.    Defendants accepted possession of Plaintiffs' and Class Members' personal data for the purpose of providing e-commerce services to Plaintiffs and Class Members.

71.    Had Defendants disclosed to Plaintiffs and Class Members that Defendants did not have adequate computer systems and security practices to secure users' and former users' personal data, Plaintiffs and members of the Class would not have provided their PII to Defendants.

72.    Defendants recognized that their current and former customer's personal data is highly sensitive and must be protected, and that this protection was of material importance as part of the bargain to Plaintiffs and Class Members.

73.    Plaintiffs and Class Members fully performed their obligations under the implied contracts with Defendants.

74.    Defendants breached the implied contract with Plaintiffs and Class Members by failing to take reasonable measures to safeguard their data.

75.    As a direct and proximate result of the breach of the contractual duties, Plaintiffs and members of the proposed Class have suffered actual, concrete, and imminent injuries.  The injuries suffered by Plaintiffs and the Class Members include: (a) the invasion of privacy; (b) the compromise, disclosure, theft, and unauthorized use of Plaintiffs' and Class Members' PII; (c) economic costs associated with the time spent to detect and prevent identity theft, including loss of

productivity; (d) monetary costs associated with the detection and prevention of identity theft; (e) economic costs, including time and money, related to incidents of actual identity theft; (f)  the emotional distress, fear, anxiety, nuisance and annoyance of dealing related to the theft and compromise of their PII; (g) the diminution in the value of the services bargained for as Plaintiffs and Class Members were deprived of the data protection and security that Defendants promised when Plaintiffs and the proposed class entrusted Defendants with their PII; and (h) the continued and substantial risk to Plaintiffs and Class Members PII, which remains in Defendants' possession with inadequate measures to protect Plaintiffs' and Class Members' PII.

## THIRD CLAIM FOR RELIEF

### UNJUST ENRICHMENT

### (On Behalf of Plaintiff and the Class)

76.    Plaintiff re-alleges and incorporates by reference herein all of the allegations contained in paragraphs 1 through 75.

77.    Defendants benefited from receiving Plaintiff's and Class Members' PII by its ability to retain and use that information for its own benefit. Defendants understood this benefit.

78.    Defendants also understood and appreciated that Plaintiff's and Class Members' PII was private and confidential, and its value depended upon Defendants maintaining the privacy and confidentiality of that information.

79.    Plaintiff and Class Members conferred a monetary benefit upon Defendants in the form of providing their PII to Defendants with the understanding that Defendants would pay for the administrative costs of reasonable data privacy and security practices and procedures. Specifically, Plaintiff and Class Members were required to provide their PII. In exchange, Plaintiff and Class members should have received adequate protection and data security for such PII held by Defendants.

CLASS ACTION COMPLAINT

80.    Defendants knew Plaintiff and Class members conferred a benefit which Defendants accepted. Defendants profited from these transactions and used the PII of Plaintiff and Class Members for business purposes.

81.    Defendants failed to provide reasonable security, safeguards, and protections to the PII of Plaintiff and Class Members.

82.    Under the principles of equity and good conscience, Defendants should not be permitted to retain money belonging to Plaintiff and Class Members, because Defendants failed to implement appropriate data management and security measures mandated by industry standards.

83.    Defendants wrongfully accepted and retained these benefits to the detriment of Plaintiff and Class Members.

84.    Defendants' enrichment at the expense of Plaintiff and Class Members is and was unjust.

85.    As a result of Defendant's wrongful conduct, as alleged above, Plaintiff and the Class Members are entitled to restitution and disgorgement of all profits, benefits, and other compensation obtained by Defendants.

## FOURTH CLAIM FOR RELIEF

### Declaratory Judgment

### (On Behalf of Plaintiff and the Class)

86.    Plaintiff re-alleges and incorporates by reference herein all of the allegations contained in paragraphs 1 through 85.

87.    Defendants owe duties of care to Plaintiff and Class Members which would require them to adequately secure PII.

88.    Defendants still possess PII regarding Plaintiff and Class Members.

89.    Although Defendants claim that they take the security of personal information very seriously and "have worked closely with the digital forensics firm to enhance the security of our sites to facilitate safe and secure transactions" there

CLASS ACTION COMPLAINT

is no detail on what, if any, fixes have really occurred.[10]

90.    Plaintiff and Class Members are at risk of harm due to the exposure of their PII and Defendants' failure to address the security failings that lead to such exposure.

91.    There is no reason to believe that Defendants' security measures are any more adequate than they were before the breach to meet Defendants' contractual obligations and legal duties, and there is reason to think Defendants have other security vulnerabilities that have not yet been knowingly exploited.

92.    Plaintiff, therefore, seek a declaration that (1) Defendants' existing security measures do not comply with its explicit or implicit contractual obligations and duties of care to provide reasonable security procedures and practices appropriate to the nature of the information to protect customers' personal information, and (2) to comply with its explicit or implicit contractual obligations and duties of care, Defendants must implement and maintain reasonable security measures, including, but not limited to:

    a. Engaging third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Defendants' systems on a periodic basis, and ordering Defendants to promptly correct any problems or issues detected by such third-party security auditors;

    b. Engaging third-party security auditors and internal personnel to run automated security monitoring;

    c. Auditing, testing, and training its security personnel regarding any new or modified procedures;

    d. Segmenting its user applications by, among other things, creating firewalls and access controls so that if one area is compromised,

---

[10] https://oag.ca.gov/system/files/Consumer%20Notification%20Template.pdf (last visited Dec. 28, 2021)

hackers cannot gain access to other portions of Defendants' systems;

e. Conducting regular database scanning and securing checks;

f. Routinely and continually conducting internal training and education to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach;

g. Purchasing credit monitoring services for Plaintiff and Class Members for a period of ten years; and

h. Meaningfully educating its users about the threats they face as a result of the loss of their PII to third parties, as well as the steps Defendants' customers must take to protect themselves.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all of the members of the Class, respectfully request that the Court enter judgment in their favor and against Defendants as follows:

A. For an Order certifying the Class as defined herein and appointing Plaintiff and her Counsel to represent the Class;

B. For equitable relief enjoining Defendants from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of Plaintiff's and Class Members' PII;

C. For injunctive relief requested by Plaintiff, including but not limited to, injunctive and other equitable relief as is necessary to protect the interests of Plaintiff and Class Members, including but not limited to an order:

    i. prohibiting Defendants from engaging in the wrongful and unlawful acts described herein;

    ii. requiring Defendants to protect, including through encryption, all data collected through the course of its business in accordance with all applicable regulations, industry standards, and federal, state or

CLASS ACTION COMPLAINT

local laws;

iii. requiring Defendants to delete, destroy, and purge the personal identifying information of Plaintiff and Class Members unless Defendants can provide to the Court reasonable justification for the retention and use of such information when weighed against the privacy interests of Plaintiff and Class Members;

iv. requiring Defendants to implement and maintain a comprehensive Information Security Program designed to protect the confidentiality and integrity of the personal identifying information of Plaintiff and Class Members' PII;

v. prohibiting Defendants from maintaining Plaintiff's and Class Members' PII on a cloud-based database;

vi. requiring Defendants to engage independent third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Defendants' systems on a periodic basis, and ordering Defendants to promptly correct any problems or issues detected by such third-party security auditors;

vii. requiring Defendants to engage independent third-party security auditors and internal personnel to run automated security monitoring;

viii. requiring Defendants to audit, test, and train its security personnel regarding any new or modified procedures;

ix. requiring Defendants to segment data by, among other things, creating firewalls and access controls so that if one area of Defendants' network is compromised, hackers cannot gain access to other portions of Defendants' systems;

x. requiring Defendants to conduct regular database scanning and

CLASS ACTION COMPLAINT

securing checks;

xi.   requiring Defendants to establish an information security training program that includes at least annual information security training for all employees, with additional training to be provided as appropriate based upon the employees' respective responsibilities with handling PII, as well as protecting the personal identifying information of Plaintiff and Class Members;

xii.   requiring Defendants to routinely and continually conduct internal training and education, and on an annual basis to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach;

xiii.   requiring Defendants to implement a system of tests to assess its respective employees' knowledge of the education programs discussed in the preceding subparagraphs, as well as randomly and periodically testing employees' compliance with Defendants' policies, programs, and systems for protecting PII;

xiv.   requiring Defendants to implement, maintain, regularly review, and revise as necessary a threat management program designed to appropriately monitor Defendants' information networks for threats, both internal and external, and assess whether monitoring tools are appropriately configured, tested, and updated;

xv.   requiring Defendants to meaningfully educate all class members about the threats that they face as a result of the loss of their confidential PII to third parties, as well as the steps affected individuals must take to protect themselves;

xvi.   requiring Defendants to implement logging and monitoring programs sufficient to track traffic to and from Defendants' servers; and

CLASS ACTION COMPLAINT

xvii.   for a period of 10 years, appointing a qualified and independent third-party assessor to conduct a SOC 2 Type 2 attestation on an annual basis to evaluate Defendants' compliance with the terms of the Court's final judgment, to provide such report to the Court and to counsel for the class, and to report any deficiencies with compliance of the Court's final judgment; and

D.   For restitution and disgorgement of the revenues wrongfully obtained as a result of Defendants' wrongful conduct;

E.   For an award of actual damages, statutory damages and compensatory damages, in an amount to be determined at trial;

F.   For an award of costs of suit, litigation expenses and attorneys' fees, as allowable by law; and

G.   For such other and further relief as this Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff, on behalf of herself and all others similarly situated, hereby demand a jury trial for all claims so triable.

DATED: January 5th, 2022          **BRADLEY/GROMBACHER, LLP**


By: */s/ Kiley Grombacher*
Kiley Grombacher
Marcus Bradley
31365 Oak Crest Dr., Suite 240
Westlake Village, CA 91361
Phone 805.270.7100
Fax: 805-270-7589
*kgrombacher@bradleygrombacher.com*
*mbradley@bradleygrombacher.com*

///
///

CLASS ACTION COMPLAINT

**THE LYON FIRM, LLC**


*/s/ Joseph M. Lyon*
Joseph M. Lyon (*pro hac vice* forthcoming)
2754 Erie Avenue
Cincinnati, OH 45208
Phone: (513) 381-2333
Fax: (513) 766-9011
*jlyon@thelyonfirm.com*

**_Counsel for Plaintiff and the Class_**

CLASS ACTION COMPLAINT